IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

YOLANDA GISELE THOMPSON                                                    PLAINTIFF

VS.                              Civil No. 2:14-cv-02135-MEF

CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Yolanda Gisele Thompson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I. Procedural Background

Plaintiff protectively filed her applications for DIB and SSI on November 14, 2011, alleging an onset date of September 1, 2011, due to chronic migraines, an enlarged thyroid, diabetic tendencies, high blood pressure, and acid reflux. (T. 128-134, 135-142, 182) Her applications were denied initially on February 17, 2012, and upon reconsideration on April 24, 2012. (T. 73-75, 76-79) Plaintiff requested an administrative hearing (T. 87-88), and the hearing was held on November 16, 2012, before the Hon. Harold D. Davis, Administrative Law Judge ("ALJ"). (T. 26-62) Plaintiff was present and represented by her attorney, Jim O'Hern. Also present at the hearing was Debra Steele,

Ph.D., a vocational expert ("VE"). (T. 26, 28)

Plaintiff was 38 years old at the time of the hearing. (T. 31) She had a 12th grade education, and she had attended college for a year and a half. (T. 31-32) She last worked as a cashier and stocker at Dollar General (T. 34-35), and she had other past relevant work ("PRW") experience as a production line worker at a poultry factory, a food service worker at a hospital, as an over-night stocker at Wal-Mart, as a cashier and stocker at Toys-R-Us and Dollar Tree, as a waitress at Pizza Parlour, and as a Avon sales representative. (T. 36-38, 189-196) At the time of her applications, Plaintiff was working part-time at Dollar General, about 11-16 hours per week at $7.50 per hour, although she felt like she had been unable to work substantially since September 1, 2011. (T. 129, 168)

In a Decision issued on January 11, 2013, the ALJ found: (1) that Plaintiff met the insured status requirements of the Act through December 31, 2012; (2) that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 1, 2011; (3) that the Plaintiff has medically determinable severe impairments of essential hypertension, diabetes mellitus, migraine headaches, and depression; (4) that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926); (5) that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except the Plaintiff is able to perform only simple tasks with simple instructions; (6) that Plaintiff is capable of performing past relevant work as a poultry eviscerator, a food service worker, cashier, and housekeeper; and, (7) that Plaintiff has not been under a disability, as defined by the Act, from the alleged onset date of September 1,

2011 through the date of the Decision on January 11, 2013. (T. 15-21)

Plaintiff appealed this decision to the Appeals Council (T. 7-9), but said request for review was denied on April 17, 2014. (T. 1-6) Plaintiff then filed this action on June 12, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 11) Both parties have filed appeal briefs (Docs. 13 and 15), and the case is ready for decision.

## II.  Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental

impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff was not disabled from the alleged date of onset on September 1, 2011 through the date of the ALJ's Decision on January 11, 2013. Plaintiff raises three issues on appeal: (A) that Plaintiff had two impairments, namely Type II diabetes with associated neuropathy in her hands and feet and recurring, severe migraine headaches, that the ALJ erroneously did not find to be severe; (B) that the ALJ erred in making his credibility findings; and, (C) that the ALJ erred as to his Step Four analysis. (Doc. 13, pp. 2, 10-18) Each issue is addressed

in turn.

### A. Step Two Findings

Plaintiff argues that "there were two impairments which the ALJ did not consider severe, namely the Plaintiff's Type II diabetes with associated neuropathy in her hands and feet and her recurring, severe migraine headaches." (Doc. 13, pp. 10-11) The Commissioner points out, correctly, that the ALJ did not make his disability determination at step two, but instead resolved the step two threshold analysis in Plaintiff's favor, expressly finding Plaintiff's diabetes mellitus and migraine headaches to be severe, and that the ALJ moved on to steps three and four of the sequential evaluation process. (Doc. 15, p. 4) To the extent Plaintiff's argument on appeal is that the ALJ erred in not finding Plaintiff's diabetes and migraines severe at step two, the argument is contrary to the record and is without merit as those impairments were determined to be severe by the ALJ; however, when Plaintiff's argument is narrowed to the *associated neuropathy in her hands and feet*, the Court has concern about the ALJ's finding that Plaintiff's neuropathy has no more than a minimal effect on her ability to do basic work activities.

The ALJ based his finding on his conclusion that Plaintiff "has not evidenced treatment for neuropathy." (T. 16) That conclusion, however, is not substantiated by the record. Plaintiff had, in fact, sought treatment for numbness and tingling in her hands and feet. On November 17, 2011, Plaintiff complained of numbness in her right hand to the elbow and bilaterally in her feet. She was diagnosed with diabetes mellitus, Type II, uncontrolled, with numbness and tingling. (T. 327-328) Other medical records through 2012 reflect a diagnosis of peripheral vascular disease, with "numbness and tingling in both hands and feet." (T. 414, 431, 438, 446) On November 20, 2012, the day after the hearing, Plaintiff was evaluated by a neurologist, Duane L. Birky, M.D., who

documented Plaintiff's complaints of numbness and tingling in her hands and feet, "worse at times and more painful in her hands," which has been "going on for about a year." Plaintiff complained of weakness in her hands, particularly when lifting something heavy. (T. 468) During the hearing, Plaintiff testified to a cooking accident the night before caused by numbness in her hands. (T. 40) Dr. Birky diagnosed Plaintiff as having, among other conditions, "neuropathy probably related to diabetes," and he slightly increased her dosage of amitriptyline to help with the paresthesias she is suffering from her neuropathy. He also ordered a nerve conduction study and indicated that he intended to see Plaintiff back in the office in several months for follow up. (T. 470) The nerve conduction study was performed on November 29, 2012. Dr. Birky noted "[t]his is an abnormal study," with evidence of "a severe median neuropathy at the right wrist and a mild median neuropathy at the left." (T. 465-467)

Considering such objective medical evidence, the Court does not believe that the ALJ's finding that Plaintiff's neuropathy has no more than a minimal effect on her physical ability to do basic work activities is supported by substantial evidence, and remand is necessary for the ALJ to reconsider the severity of Plaintiff's neuropathy. On remand, the ALJ should specifically inquire of Dr. Birky, Plaintiff's treating neurologist, regarding the severity of Plaintiff's neuropathy and any associated functional limitations.

### B. Credibility Determination

Among the ALJ's findings is his determination that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (T. 18) Plaintiff contends that the ALJ did not provide "a meaningful explanation" to support his finding that Plaintiff's statements, and the testimony of Plaintiff's

witness, were not entirely credible. (Doc. 15) The Court agrees.

The credibility of a claimant's subjective testimony is primarily for the ALJ to decide. *Vossen*, 612 F.3d at 1017. The ALJ's credibility determination will be upheld if the ALJ provides good reasons for discounting the claimant's subjective complaints - such as inconsistencies in the record or the factors set forth in *Polaski*[1] - and those reasons are supported by substantial evidence. *Gonzales v. Barnhart*, 465 F.3d 890, 895-96 (8th Cir. 2006).

In assessing the credibility of a claimant, the ALJ is required to examine and apply the following five factors: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and, (5) the functional restrictions. *Polaski*, 739 F.2d at 1322. A methodical discussion of each factor is not required, as long as the ALJ acknowledges and examines these factors prior to discounting the Plaintiff's subjective complaints. *Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000).

While the ALJ cited 20 C.F.R. §§ 404.1529, 416.929 and SSR 96-7p (T. 18), thereby at least indirectly acknowledging the factors to be considered in assessing Plaintiff's credibility, the ALJ's Decision does not adequately set forth his "good reasons" for partially discounting Plaintiff's credibility. There is no discussion at all about discounting the testimony of Plaintiff's witness.

Regarding Plaintiff's activities of daily living, the ALJ commented that Plaintiff's own testimony showed that she was "caring for a husband, three children and a house, which were inconsistent with disabling pain." The record actually shows otherwise. Plaintiff stated in her Function Report - Adult submitted on November 20, 2011 that she needed "help with it all" (T. 201),

---

[1] *Polaski v. Heckler*, 739 F.2d 1320 (1984).

and in a Disability Report - Appeals submitted on June 15, 2012 she advised that pain and swelling in her hands make it difficult for her to comb her hair, brush her teeth, or perform simple household chores, and that she needs assistance with simple household chores (T. 218). At the hearing, Plaintiff testified that she does not do housework; she does not normally cook, with other members of the family doing so; that she gets up to see her husband and children off to work and school, then she takes her medication and goes back to bed; and, that she does not get out of the house unless she has an appointment scheduled or something she has to do. (T. 42-43) Plaintiff's witness, Lisa Thompson, who is the fiancé of Plaintiff's brother, testified that she has known Plaintiff for about two years and she tries to see her every other day. (T. 54) Ms. Thompson has known Plaintiff when she was working and since she left working. She testified that Plaintiff's headaches and diabetes have gotten worse, and that Plaintiff sounds "very tired" on the phone when she calls and looks "exhausted" when she goes over to visit her. (T. 55) She further testified that Plaintiff is frustrated and scared that she is going to black-out from a headache, and that she relies on people more that she used to - including driving. (T. 55) Ms. Thompson has nothing to gain financially by Plaintiff's receipt of benefits, and the ALJ gave no reasons whatsoever to ignore her testimony.

Concerning the duration, frequency, and intensity of Plaintiff's pain and symptoms, the ALJ found that "although the claimant complained of debilitating physical and mental symptoms, which prevent her from working, the medical evidence of record documented relatively little long-term treatment for any condition." (T. 18) This finding is not supported by substantial evidence.

To the contrary, the medical evidence of record demonstrates that Plaintiff has had recurrent problems with severe migraine headaches for which she has sought treatment since early September, 2011. The ALJ found, however, that "by March 2012, the Plaintiff reported improvement in her

headaches while taking Maxalt," and that "[i]n November 2012 she reported even greater improvement with the addition of Topamax to her medication regimen." (T. 19) On March 13, 2012, Plaintiff did report that she was "doing better" with the Maxalt and Lopressor, but she was still noted "positive for headaches (only five in the last month)." (T. 461) On November 5, 2012, she sought follow-up care, having gone to the ER for a migraine, and she was again noted to be "positive for headaches," but also "improving, 2 Topamax at bedtime now." (T. 455-456) These medical records are not substantially supportive of the ALJ's conclusion that Plaintiff's headaches had significantly "improved." In this sense, use of the word "improved" is similar to a statement in an office note that the claimant is "doing well." This has been discussed by the Eighth Circuit in *Hutsell v. Massanari*, 259 F.3d 707, 712, (8th Cir. 2001), where the Commissioner relied on notes from medical records indicating that the claimant was "doing well," and the Court stated, "[w]e also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity." *See, e.g., Gude v. Sullivan*, 956 F.2d 791, 794 (8th Cir.1992); *Fleshman v. Sullivan*, 933 F.2d 674, 676 (8th Cir.1991).

As discussed in the previous section, the medical evidence also shows that Plaintiff had been treated for peripheral vascular disease or neuropathy from November 2011 through the date of hearing and thereafter. (T. 327-328, 414, 431, 438, 446) The nerve conduction velocity study performed by Dr. Birky showed that Plaintiff suffers from a severe median neuropathy in her right wrist and a mild median neuropathy in her left wrist. (T. 465-467) The results of that objective medical testing support Plaintiff's subjective complaints of numbness and tingling in her hands.

Considering the evidence as a whole, the Court cannot agree that the ALJ adequately

examined the *Polaski* factors and gave good reasons for discounting Plaintiff's subjective complaints of pain and other symptoms. Remand is necessary for reconsideration of Plaintiff's subjective complaints in accordance with the *Polaski* factors.

### B. Step Four Analysis

At step four of the sequential evaluation, upon finding that Plaintiff retained the RFC to perform light work, except as limited to only simple tasks with simple instructions, the ALJ determined that Plaintiff was capable of performing her past relevant work as a poultry eviscerator, food service worker, cashier, and housekeeper. (T. 20) In light of the medical evidence discussed above regarding Plaintiff's recurrent, severe migraine headaches, and neuropathy in both hands and feet, the Court cannot conclude that the ALJ's step four finding is supported by substantial evidence.

The medical evidence as a whole demonstrates that Plaintiff's recurrent, severe migraine headaches have responded poorly to medications, and Plaintiff's physicians are still attempting to find the most effective regimen of medications to treat them. At best, one of Plaintiff's migraine headaches may last only one hour; at worst, and as evidenced by emergency room records, a migraine may last for several days. (T. 45, 311, 388-389, 399)

The ALJ in his analysis discounted the medical source statement of Stefanie Ellis, APN, because it reported that Plaintiff had only five headaches in the previous month, but then stated that Plaintiff had "two to three headaches a week," that she had poor response to a number of migraine medications, and that migraine headaches would interfere with her ability to work. (T. 19) The ALJ found APN Ellis' statement (T. 399) to be internally inconsistent and inconsistent with the medical evidence as a whole. The Court disagrees. It appears that the ALJ has misinterpreted APN Ellis' statement regarding the frequency of Plaintiff's migraine headaches, and that misinterpretation lead

to his conclusion that the statement was internally inconsistent. As to the frequency of the migraines, APN Ellis documented that Plaintiff had "only 5 in the last month," and the ALJ found that to be inconsistent with "two to three headaches a week." APN Ellis did not report that Plaintiff was having "two to three headaches a week," but instead, she reported that Plaintiff would miss "2 -3 days" in response to the inquiry regarding the average number of days missed per week due to migraines. This is actually consistent with other medical evidence of migraines lasting several days. (T. 311, 388-389) Thus, APN Ellis' statement is not internally inconsistent and is consistent with the medical evidence as a whole. Moreover, the medical evidence does not show that medications were effectively controlling Plaintiff's migraine headaches. As discussed above, while Plaintiff was noted to have some improvement with her current regimen of medications, it is also clear that she still suffers from migraines and the doctors are continuing to adjust her medications to obtain the best results. (T. 455-456, 461, 468-470)

Debra Steele, the vocational expert, testified that missing four days of work per month would eliminate any competitive employment available. (T. 61) Consequently, for Plaintiff to miss two to three days of work per week, on average, due to migraine headaches, Plaintiff would not be employable according to the VE. Yet, the ALJ's determination of RFC included no limitations associated with Plaintiff's well documented chronic migraine headaches.

Similarly, the ALJ's determination of RFC does not include any limitations associated with Plaintiff's neuropathy. Objective medical testing, however, has confirmed neuropathy in both of Plaintiff's wrists, with the impairment to Plaintiff's right wrist being documented as severe.

On remand, the ALJ is directed to obtain an expert opinion from Plaintiff's neurologist, Duane L. Birky, M.D., regarding any limitations of basic work related activities associated with

Plaintiff's migraine headaches and her neuropathy. Such additional expert opinion should then be considered in determining Plaintiff's RFC and whether Plaintiff can return to her PRW. Upon such evidence, if the ALJ determines that Plaintiff is precluded from returning to her PRW, the ALJ must then proceed to step five of the sequential evaluation process to determine whether the Plaintiff is able to perform other work in the national economy given her age, education, and experience.

### IV. Conclusion

After reviewing the record in this case, the undersigned is of the opinion that the ALJ's step two finding, his credibility determination, and his step four finding are not supported by substantial evidence. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded for further consideration of the severity of Plaintiff's chronic migraine headaches and neuropathy in her hands and feet at step two; for further analysis of the credibility of Plaintiff's subjective complaints of pain and symptoms; and, for further consideration at step four of Plaintiff's work-related functional limitations associated with her severe impairments, her RFC, and her ability to return to PRW.

DATED this 14th day of July, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE